# TRUST ACCOUNT AGREEMENT

This Agreement is made, in this ___ day of _____, 2004, by and between Safeco Insurance Companies ("Surety"), New England Foundation Company, Inc. ("Principal" or "New England"), Beacon Consulting Group, Inc. ("Beacon") and Patrick A. O'Neill and Patricia E. O'Neill ("Indemnitors").

## I. RECITALS

WHEREAS, on or about June 18, 1997, the Principal and the Indemnitors executed an Agreement of Indemnity with the Surety (the "Agreement of Indemnity"), a copy of which is attached hereto as Exhibit 1;

WHEREAS, the Principal entered into a construction contract (the "Contract") with Aetna Bridge Company (the "Obligee") for the project known as RI-DOT Contract No. 2002-CB-097 Drill Shafts of Washington Bridge (the "Project");

WHEREAS, as required by the Contract, and induced by and in reliance upon the execution of the Agreement of Indemnity by the Principal and the Indemnitors, the Surety executed a Subcontract Performance Bond and Subcontract Payment Bond under Bond No. 6192455 (the "Bonds") as more fully set forth in Exhibit 2;

WHEREAS, the Contract is in its final stage of completion, and the Principal and the Indemnitors hereby acknowledge and admit that: (a) the Principal is financially unable to perform or complete the performance of the Contract; (b) certain subcontractors and suppliers of labor and/or materials with respect to the Contract and Project have not been paid; (c) as a result of (a) and (b) above, the Principal has requested financing by the surety to complete the bonded contract;  and (d) but for the willingness of the Surety to enter into this Agreement, the Principal will be unable to complete the performance of the

Contract and pay its subcontractors and suppliers of labor and/or materials with respect to the Contract and Project.

WHEREAS, in order for the Surety to consider the Principal's request for financing of the bonded contract, the Surety must conduct an investigation prior to responding to the Principal's request; and

WHEREAS, during this Surety's investigation, the Surety agrees to provide funding through a joint control trust account as set forth below; and

WHEREAS, once the surety's investigation has revealed information sufficient to respond to the Principal's request for financing and a determination has been made and communicated to the Principal, the parties will enter into a separate long term financing agreement; and

NOW, THEREFORE, in consideration of these premises and other good and valuable consideration, the receipt and sufficiency which is hereby acknowledged, it is hereby mutually understood and agreed by and among the Principal, the Indemnitors, the Surety and Beacon as follows:

**II.     Indemnification.**

1. The Principal and the Indemnitors hereby acknowledge their execution of the Agreement of Indemnity and reaffirm their joint and several obligations and liabilities to the Surety.

2. Nothing contained in this Agreement and done pursuant hereto shall in any way impair, alter or modify any and/or all of the rights and remedies of the Surety against the Principal and/or the Indemnitors under or in connection with the Agreement of

Indemnity, nor the rights and remedies of the Principal and/or Indemnitors against the Surety.

3.      As initial collateral to secure the obligations of the Principal and the Indemnitors to the Surety pursuant to the terms of the Agreement of Indemnity and this Agreement, the Principal and the Indemnitors ,the Principal is the owner of a certain Life Insurance policy number 00277934, with the Empire General Life Assurance Corporation, insuring the life of Patrick A. O'Neill ("Policy"). As part of this Agreement, the Principal, on or before the execution of this Agreement, shall: a) Irrevocably designate "Safeco Insurance Companies" as sole beneficiary and loss payee of the Policy; and b) Complete an Assignment of Policy as collateral security to "Safeco Insurance Companies." The Principal shall take all actions necessary and shall execute any and all documents and forms as may be required to effectuate the designation and assignment as set forth in (a) and (b) above. The Principal shall and is authorized by the Surety to apply any accumulated value of the Policy to the payment of any premiums due. In the event that for any reason the accumulated value is insufficient to pay all or any portion of any premium payment(s), the Principal and/or Indemnitors shall pay any and all premiums due and shall keep the Policy in full force and effect throughout the term of this Agreement. The Principal shall provide the Surety with sufficient evidence of payment of all premiums. The Principal and/or Indemnitors shall not authorize or allow the Policy to be released, surrendered, cancelled, amended, modified, transferred or assigned and will do nothing to impair the Surety's rights under the Policy without the prior written consent of the Surety. In the event payment of a death benefit is made to the Surety under the Policy, the Surety shall be entitled to apply all or a portion of the death benefit

proceeds to offset all or a portion of the Surety's loss. In the event of a default under this Agreement by the Principal and/or Indemnitors, the Surety may, at its sole option and discretion, liquidate and receive any portion or all of the accumulated and/or surrender value of the Policy in one or more payments. In the event the total obligation to the Surety is less than the total value of the Policy, partial assignment or remainder beneficial interest to remaining beneficiaries, the Surety shall be entitled to apply all or a portion of the death benefit proceeds to offset all or a portion of the Surety's loss.

4.  As part of this Agreement, and with the consent and approval of the Indemnitors, the Principal shall execute and deliver to the Surety voluntary letter of default and termination (the "Letter of Default") on the Principal's corporate letterhead addressed to the Obligee for the Contract and Project, copies of which are attached hereto as Exhibit 3, and are incorporated herein by reference. In accordance with the terms of the Agreement of Indemnity and this Agreement, the Surety shall hold and may use the Letter of Default on the Contract and Project, at the sole option and discretion of the Surety, whether or not there is a default under any of the Contract, the Agreement of Indemnity or this Agreement, and regardless as to whether this Agreement has been terminated by the Surety. The Surety, however, agrees to notify the Principal and Indemnitors before taking such action.

5.  As part of this Agreement, and with the consent and approval of the Indemnitors, the Principal shall execute and deliver to the Surety irrevocable voluntary letter of direction (the "Letter of Direction") copies of which are attached hereto as Exhibit 4, addressed to the Obligee directing that all Contract Funds (as defined in Section II.2 below) from the Contract directly payable to the Trust Account.

The Principal, Indemnitors and the Surety agree that the Surety reserves its rights to demand additional collateral security as part of any continuing financing by the Surety.

### III. Trust Account.

6. The Principal and the Surety shall open a joint control trust checking account (the "Trust Account") at Citizen's Bank (the "Bank") designated in the name of New England Foundation Company," a copy of which is attached hereto as Exhibit 5. The Principal has authorized the Bank to establish the Trust Account. The Principal shall not open any other account(s) at the Bank, or any other bank or financial institution of any kind, without the express written consent of the Surety for use in connection with bonded jobs.

7. For the purposes of this Agreement, "Contract Funds" shall mean any and all monies payable to or received by the Principal under or in connection with the Contracts, including but not limited to monies earned and to be earned, payment of retained percentages and final payments due or to become due to the Principal of every kind or nature under the Contracts, including payments for all extras, claims, bonuses and/or of any other kind or nature which may be received by the Principal from the Contracts.

8. The Principal, the Indemnitors, and the Surety agree that all Contract Funds from the Contract shall be deemed Trust funds and shall be deposited into Trust Account. The Principal agrees to direct the Obligees on the Contract to make all Contract Funds from the Contract directly payable to the Trust Account.

9. In addition, the Surety agrees that all monies which the Surety may, in its sole discretion and/or in accordance with the terms and conditions of this Agreement or the Agreement of Indemnity, advance or loan to the Principal shall be deposited in the Trust

Account unless otherwise agreed between the Principal and either Beacon or the Surety. The Principal and Indemnitors acknowledge and agree that all funds deposited in the Trust Account are the sole property of the Surety.

10. The Contract Funds are hereby irrevocably segregated, earmarked and set aside solely and only for the purposes set forth in this Agreement. The Contract Funds and all other monies deposited in the Trust Account shall be considered trust funds. The Principal and Beacon shall hold all Contract Funds in the Trust Account, in trust, for the Surety separate and apart from all other funds and property of the Principal. The Principal and Beacon hereby covenant and agree that they will not knowingly permit any funds in the Trust Account, whether represented by checks, vouchers, orders or otherwise, to be used for any purpose other than as more particularly set forth in this Agreement unless otherwise agreed between the Principal and either Beacon or the Surety.

11. All checks and charges against the Trust Account shall be required to have one signature, the authorized signatures being that of an authorized representative of the Surety – Ann T. Hester or Kirk Austin. The Principal and the Surety mutually agree that they will work in conjunction with the Bank to establish such other means and methods of transferring funds to and from the Trust Account so long as such means or methods require the consent of both the Principal and the Surety or Beacon for any withdrawal or transfer of funds from the Trust Account.

12. The persons designated to countersign checks or approve transfers on the Trust Account on behalf of the Surety are Ann T. Hester and Kirk Austin. It is understood and agreed that the Surety may, in its sole discretion, substitute or add another

representative or representatives for the persons originally named, without the prior consent of, but upon notice to the Principal and the Bank.

13.    The Principal hereby agrees that any Contract Funds it may receive contrary to the letters of direction sent to the Obligee pursuant to Paragraph 3 herein, or because of the Principal's failure to promptly issue such letter of direction or for any other reason shall be held as trust funds by the Principal and shall be immediately deposited with the Trust Account or presented to a representative of the Surety or Beacon for deposit in the Trust Account.

14.    The Surety shall maintain possession of the checkbook for the Trust Account. Ann T. Hester and/or Kirk Austin shall receive directly from the Bank all bank statements and the originals of all deposit slips, canceled checks, debit memos, service charges, etc. from the Trust Account. The Principal hereby authorizes the Bank to furnish to the Surety and Ann T. Hester such information as the Surety may desire concerning deposits to and withdrawals from the Trust Account. The Principal also authorizes the Obligee to furnish to the Surety complete information concerning payments made to the Principal of Contract Funds from the Contracts and to furnish any other information concerning the Contracts which the Surety may require. Upon request from the Principal, the Surety shall furnish to the Principal copies of all bank statements and checks which have been returned and copies of any other documents or instruments relating to the Trust Account.

15.    None of the Contract Funds deposited in the Trust Account shall be subject to any right of set-off by the Bank as a result of any transactions involving the Bank, the Principal and/or the Indemnitors, nor be assigned or diverted from the uses or purposes

set forth in this Agreement. The Principal makes no representations concerning the position of the Bank concerning any right of set-off by the Bank or the Bank's willingness to issue a written acknowledgment as set forth herein. The Surety may require of the Bank a written acknowledgment of this paragraph as a condition to the establishment or continuance of the Trust Account at the Bank.

16. Except as provided in Paragraph 18 or as the Principal and the Surety may otherwise agree, the Contract Funds shall be used solely for the payment of labor, material, equipment and subcontractor costs actually used in the prosecution of the work under the Contracts and for which the Surety may become liable under its Bonds. It is specifically understood and agreed by the Principal and Indemnitors, and except as set forth herein, that the Contract Funds shall not be used to pay obligations of the Principal on contracts not bonded by the Surety.

17. The Principal and Indemnitors acknowledge that the Surety is not obligated to pay, or cause to be paid, any of the overhead and general and administrative expenses of the Principal. The Surety, however, at its option and sole discretion, may consent to the use of some of the Contract Funds and other funds in the Trust Account, for payment of the Principal's overhead and general administrative expenses.

18. On a weekly basis, no later than 5 p.m. on Monday of each week due to the payroll cycle, or as otherwise requested by the Surety or Beacon, the Principal will provide to the Surety and Beacon a document entitled "Payment Requisition", a form of which is attached hereto as Exhibit 6. The Payment Requisition will contain a list of those payments the Principal wishes to issue from the Trust Account, broken down by name of payee, check number and check amount, and listing the total payment to all

8

payees. Backup documentation supporting the requested payments shall be attached to the Payment Requisition. The Payment Requisition shall be executed by the Principal establishing its request to the Surety and Beacon for payment of the checks from the Trust Account. In addition, and as a condition to the issuance of any check from the Trust Account, a partial waiver and release in a form acceptable to the Surety in the amount of the check shall be obtained by the Principal and delivered to Beacon or the Surety. The Payment Requisition shall be accompanied by checks to the payees listed on the Payment Requisition and executed by the Principal. The Payment Requisition, executed checks and back-up materials as set forth herein will be immediately delivered to Ann T. Hester. Ann T. Hester will promptly review the Payment Requisition and those checks that are approved for payment will be signed as authorized and set forth in paragraph 6.

19.    Ann T. Hester agrees to immediately mail the approved checks, and any partial waiver and release forms if required, to the named payees in stamped addressed envelopes, except that New England still send checks to employees of the Principal by overnight delivery to the Principal so as to be received by the Principal no later than 10 a.m. on Wednesday of the week in question. The Principal shall deliver employee paychecks by had in accordance with applicable collective bargaining agreements.

20.    It is expressly understood by the Principal and Indemnitors that should the Surety or Beacon disapprove of any payments requested by the Principal, such decision is final as to the Principal and Indemnitors, and the Principal and Indemnitors shall have no right or cause of action of any kind or nature against the Surety or Beacon or their agents, employees, attorneys or representative as a result of such disapproval.

21. Any amounts transferred by the Surety to the Trust Account shall be conclusively presumed to be a loss to the Surety and for which the Surety shall have equitable rights of subrogation, notwithstanding the use or misuse of such funds by the Principal, for which the Principal and Indemnitors shall be obligated to indemnify the Surety in accordance with the terms of this Agreement and the Agreement of Indemnity.

22. Payment of all withholding and payroll taxes and other amounts deducted from employee wages from the contracts shall be paid in accordance with this Agreement. It shall be the responsibility of the Principal, within the time limits of all appropriate statutes and regulations, to prepare and present to the Surety and Beacon necessary information confirming payments of such taxes and other deductions from the payroll.

23. Pursuant to the Assignment and the Power of Attorney which is attached hereby as Exhibits 7 and 8 and incorporated by reference, the Surety, through its authorized signatories in Paragraph below, is authorized and empowered to endorse in the name of the Principal any and all checks received by the Surety or its representatives constituting Contract Funds from the Contracts and/or All Net Proceeds from the Collateral Account, and to deposit said checks solely and only into the Trust Account. The Principal hereby agrees that the Surety may name one or more substitutes for the attorneys named in the Power of Attorney, with notice to the Principal. Furthermore, the Principal hereby ratifies and confirms all acts that any attorney or his substitute or substitutes may lawfully do or cause to be done by virtue of the Power of Attorney contained in Exhibit 8.

IV. **Miscellaneous Provisions.**

24. This Agreement shall be construed and governed by the laws of the

Commonwealth of Massachusetts, and shall bind the heirs, personal representatives, assignees and successors in interests of the parties hereto.

25. The Principal, Indemnitors, Surety and Beacon hereby represent, covenant and warrant that they have full right, power and authority, to execute and perform this Agreement.

26. THE PRINCIPAL AND THE INDEMNITORS HEREBY ACKNOWLEDGE AND AGREE THAT THE SURETY HAS NO OBLIGATION TO FUND THE TRUST ACCOUNT, PROVIDE FINANCIAL ASSISTANCE TO THE PRINCIPAL IN ANY MANNER OR METHOD, OR MAKE ANY PAYMENTS OTHER THAN THOSE PAYMENTS WHICH THE SURETY HAS MADE PURSUANT TO THE TERMS OF THIS AGREEMENT. THE PRINCIPAL AND THE INDEMNITORS SPECIFICALLY ACKNOWLEDGE AND AGREE THAT THEIR EXECUTION OF THIS AGREEMENT HAS NOT BEEN INDUCED BY OR MADE IN RELIANCE UPON ANY ORAL OR WRITTEN REPRESENTATIONS BY THE SURETY, BEACON OR THEIR AGENTS. IN THE EVENT THAT THE SURETY AGREES TO FUND THE TRUST ACCOUNT, PROVIDE FINANCIAL ASSISTANCE TO THE PRINCIPAL IN ANY MANNER OR METHOD, OR MAKE ANY PAYMENTS OTHER THAN THOSE PAYMENTS FOR WHICH THE SURETY HAS MADE PURSUANT TO THE TERMS OF THIS AGREEMENT, SAID ACTION SHALL BE IN THE SOLE JUDGMENT, OPTION AND DISCRETION OF THE SURETY AND IN THE BEST INTERESTS OF THE SURETY AND NOT THE PRINCIPAL OR THE INDEMNITORS. FURTHERMORE, THE SURETY'S AGREEMENT TO TAKE ANY SUCH ACTION DOES NOT BIND AND COMMIT THE SURETY TO ANY OTHER

FUNDING OF THE TRUST ACCOUNT, PROVIDING OF FINANCIAL ASSISTANCE, OR MAKING OF ANY PAYMENTS OTHER THAN THOSE PAYMENTS WHICH THE SURETY HAS MADE PURSUANT TO THE TERMS OF THIS AGREEMENT.

27.   THE EXECUTION OF THIS AGREEMENT BY THE SURETY IN NO MANNER BINDS THE SURETY TO EXECUTE ANY FUTURE BOND OR BONDS ON BEHALF OF THE PRINCIPAL. THE PRINCIPAL AND THE INDEMNITORS SPECIFICALLY ACKNOWLEDGE AND AGREE THAT THEIR EXECUTION OF THIS AGREEMENT HAS NOT BEEN INDUCED BY OR MADE IN RELIANCE UPON ANY ORAL OR WRITTEN REPRESENTATIONS BY THE SURETY OR ITS AGENTS, EMPLOYEES, ATTORNEYS OR CONSULTANTS THAT THE SURETY WILL EXECUTE ANY FUTURE BOND OR BONDS ON BEHALF OF THE PRINCIPAL.

28.   The Principal shall maintain accurate books, records and accounts showing clearly, among other things, the itemized receipts and disbursements allocable to the Contracts. The books, records and accounts shall be available for examination by the Surety, Beacon and their representatives at the Principal's principal office upon reasonable notice at all times during regular business hours. The Surety is entitled to receive copies of all bank account records of any and all accounts of the Principal, including but not limited to the Trust Account, including canceled checks, bank statements, deposit slips, debit memos, etc.

29.   The Principal hereby authorizes the Surety, Beacon and their

representative(s), including attorneys, accountants, consultants or employees, to visit at any time the job site of the Contracts, to obtain at any time access to all job records and personnel of the Principal to determine the status of the progress on the Contracts and to obtain at any time any and all other information and documentation with respect to the Contracts deemed necessary in the sole discretion of the Surety and/or its representative(s).

30.  This Agreement is solely for the benefit of the parties hereto and shall not create any rights in any person not a party hereto, or in any way increase the rights of third persons, or increase the obligations of any party hereto to any third person, or increase the liability or obligations of the Surety under its Bonds.

31.  The terms and provisions of the Agreement of Indemnity shall remain in full force and effect. Nothing contained in this Agreement shall in any way prejudice or waive the Surety's legal and equitable rights of subrogation of the Surety. The rights of the Surety under this Agreement are in addition to, and not in lieu of, any of the rights which the Surety may have against the Principal or any other parties, including the Indemnitors, at law, in equity or by the terms of any other agreement, including the Agreement of Indemnity. All rights of the Surety pursuant to the Agreement of Indemnity and this Agreement shall inure to the benefit of the Surety, its co-sureties, if any, and its and their reinsurers.

32.  No change, addition or amendment shall be made to this Agreement or to any of the terms, covenants or conditions hereto except by writing, signed by the parties to this Agreement.

33. In the event that one or more provisions of this Agreement shall be declared to be invalid, illegal or unenforceable in any respect, unless such invalidity, illegality or unenforceability shall be tantamount to a failure of consideration, the validity, legality and enforceability of the remaining provisions contained in this Agreement shall not in any way be affected or impaired thereby.

34. Except as otherwise specifically provided herein, or as specifically and subsequently agreed to by the parties in writing, all notices, requests or other communications required or permitted to be given hereunder shall be deemed duly given if mailed by the United States mail, postage prepaid and addressed as follows:

To the Principal and the Indemnitors:

> Patrick O'Neill
> President & Treasurer
> New England Foundation Co. Inc.
> 77 Federal Aveue
> Quincy, MA 02169
>
> E-Mail: paoneill@nefco.com

With a copy to:

> Bill Lance, Esquire
> Nixon, Peabody, LLP
> 101 Federal Street
> Boston, MA 02110

> Patricia F. O'Neill
> New England Foundation Co. Inc.
> 77 Federal Aveue
> Quincy, MA 02169
>
> E-Mail:

14

With a copy to:

                Bill Lance, Esquire
                Nixon, Peabody, LLP
                101 Federal Street
                Boston, MA 02110

To the Surety:

                Ann T. Hester
                Safeco Insurance Company
                2800 N. Higgins Road
                Suite 1100
                Hoffman Estates, IL 60195
                annhes@safeco.com

With a copy to:

                Bert J. Capone, Esq.
                Paula-Lee Chambers, Esq.
                Cetrulo & Capone LLP
                Two Seaport Lane, 10th Floor
                Boston, MA 02210

                E-Mail: bcapone@cetcap.com
                         pchambers@cetcap.com

It is agreed by the Principal and the Indemnitors that this Agreement shall be construed without any regard to any presumption or other rule requiring construction against the party causing this Agreement, or any Exhibits attached to this Agreement, to be drafted.

35. This Agreement may be executed in one or more counterparts, each of which shall be deemed to be an original.

IN WITNESS WHEREOF, the parties have executed this Agreement on the date indicated above, and each of the undersigned personally represent and warrant that they have the full right, power and authority to execute this Agreement on behalf of the respective parties.

ATTEST:

*/s/ George J Mullen/*

PRINCIPAL

*/s/ [signature]/*

By: New England Foundation Co.

ATTEST:

_____

SURETY

_____

By: Safeco Insurance Companies

ATTEST:

*/s/ George J Mullen/*

INDEMNITOR

*/s/ [signature]/*

By: Patrick A. O'Neill

ATTEST:

*/s/ George J Mullen/*

INDEMNITOR

*/s/ Patricia F. O'Neill/*

By: Patricia F. O'Neill

16

ATTEST:

_____          _____
                                   By:  Beacon Consulting Group, Inc.


320385