**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

---

SAFECO INSURANCE COMPANIES,

        Plaintiff,

v.

NEW ENGLAND FOUNDATION
COMPANY, INC., PATRICK A. O'NEILL,
and PATRICIA E. O'NEILL,

        Defendants.

CIVIL ACTION NO. 04-10989 ᏝᏣ Ꮐ Ꮛ

---

**REPLY OF SAFECO INSURANCE COMPANIES TO DEFENDANTS PATRICK A.
O'NEILL AND PATRICIA E. O'NEILL'S OBJECTION TO SAFECO INSURANCE
COMPANIES' MOTION TO ATTACH REAL ESTATE**

The Plaintiff, Safeco Insurance Companies ("Safeco") submits this Reply to Defendants

Patrick A. O'Neill's and Patricia E. O'Neill's ("Defendants'") Opposition to Safeco Insurance

Companies' Motion to Attach Real Estate filed on October 27, 2004 in regards to Safeco's

Motion Attach Real Estate filed on October 7, 2004 seeking to attach the personal residence

located at 20 Fair Oaks Lane, Cohasset, Massachusetts (the "Residence") to reimburse Safeco for

its actual losses. The Defendants' Objection is contrary to the plain language of the Trust

Agreement and General Indemnity Agreement ("GIA"). In further support of Safeco's Reply to

Defendants' Objection, Safeco states as follows:

**FACTUAL BACKGROUND**

1.      Safeco admits the allegation in paragraph 1 of Defendants' Objection.

2.      Safeco admits that NEFCO and its indemnitors as a condition to obtaining the

bond, NEFCO, Patrick O'Neill and Patricia O'Neill executed a General Agreement of

Indemnity. The GIA is a contract which is self-explanatory. Safeco objects to the remaining allegations in paragraph 2 of Defendants' Objection.

3.      Safeco admits that the GIA is a contract which is self-explanatory. Safeco denies any allegations to the extent they contradict, modify or characterize the terms of the contract. In further answering, Safeco states that paragraph 3 of Defendants' Objection contains conclusions of law and facts which Safeco cannot admit or deny.

4.      Safeco states that Paragraph 4 of Defendants' Objection contains conclusions of law and facts which Safeco cannot admit or deny.

5.      Safeco admits that its principal was financially unable to perform or complete the performance of the contract and it requested financing assistance to complete the bonded project.

6.      Safeco admits the allegations contained in paragraph 6 of Defendants' Objection.

7.      Safeco admits the allegations contained in paragraph 7 of Defendants' Objection.

8.      Safeco admits the allegations contained in paragraph 8 of Defendants' Objection.

9.      Safeco states that it is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 9 of the Defendants' Objection.

10.     Safeco denies by the plain language of the Trust Account Agreement that this paragraph was in lieu of or a counter-offer to eliminate the residence as a risk under the GIA.

11.     Safeco admits that the project is complete. In further answering, Safeco denies the remaining allegations contained in paragraph 11 of the Defendants' Objection.

## ADDITIONAL FACTS

The Trust Agreement specifically states:

### II.      Indemnification.

2

1.    The Principal and the Indemnitors hereby acknowledge their execution of the GIA and reaffirm their joint and several objections and liabilities to the Surety.

2.    Nothing contained in this Agreement and done pursuant hereto shall in any way impair, alter or modify any and/or all of the rights and remedies of the Surety against the Principal and/or the Indemnitors under or in connection with the GIA, nor the rights and remedies of the Principal and/or Indemnitors against the Surety.

**IV.    Miscellaneous Provisions.**

. . . THE PRINCIPAL AND THE INDEMNITORS SPECIFICALLY ACKNOWLEDGE AND AGREE THAT THEIR EXECUTION OF THIS AGREEMENT HAS NOT BEEN INDUCED BY OR MADE IN RELIANCE UPON ANY ORAL OR WRITTEN REPRESENTATIONS BY THE SURETY . . .

31.    The terms and provisions of the GIA shall remain in full force and effect. Nothing contained in this Agreement shall in any way prejudice or waive the Surety's legal and equitable rights of subrogation of the Surety. The rights of the Surety under this Agreement are in addition to, and not in lieu of, any of the rights which the Surety may have against the Principal or any other parties, including the Indemnitors, at law, in equity or by the terms of any other agreement, including the GIA.

See Trust Account Agreement, attached hereto as Exhibit A.

3

12.    In addition, under the terms of the GIA, as well as Safeco's common law rights, the Defendants are required to collateralize and hold Safeco harmless from any and all loss, costs or expenses, including attorneys' fees and interest. See GIA, attached hereto as Exhibit B.

## ARGUMENT

1.    The Defendants' Objection has no merit. Safeco's initial security, to wit, the life insurance policy ("policy") is contingent collateral. The life insurance policy has no present value. By the plain language of the Trust Agreement, the policy was one source of initial security for the financing.

2.    The Defendants argue that the Affidavit of Ms. Hester in support of Safeco's Motion for Real Estate Attachment is insufficient to show the amount of losses incurred or calculated. It is disingenuous for the Defendants to argue that Safeco's loss and expenses are not identified, fixed and certain. The Defendants, in fact, admit in paragraph 11 of their Objection that Safeco is owed "not more than $1,292,825 in connection with the financing provided to the project and on claims on the payment and performance bond issues in connection with the project."

3.    Instead, Defendants continue to rely on speculation and uncollected and un-liquidated potential claims as a source of recovery to Safeco. The Defendants rely on change orders submitted and still pending and a differing site condition claim which is pending and conclude that Safeco will be reimbursed in full for its financing. These statements are unsupported by the facts where Safeco has absolutely no collateral in place other than contingent collateral of a life insurance policy, which by its very nature is uncollectible until the death of the party so insured.

4

4.      The plain language of the Trust Agreement clearly shows that the life insurance policy was not the sole consideration under the terms of the Trust Agreement or GIA. Nothing contained in this Agreement and done pursuant hereto shall in any way impair, alter or modify any and/or all of the rights and remedies of the Surety against the Principal and/or the Indemnitors under or in connection with the GIA, nor the rights and remedies of the Principal and/or Indemnitors against the Surety.  See Exhibit A at paragraph 2.

5.      The terms and provisions of the GIA shall remain in full force and effect. Nothing contained in this Agreement shall in any way prejudice or waive the Surety's legal and equitable rights of subrogation of the Surety.  The rights of the Surety under this Agreement are in addition to, and not in lieu of, any of the rights which the Surety may have against the Principal or any other parties, including the Indemnitors, at law, in equity or by the terms of any other agreement, including the GIA.  See Exhibit A at Paragraph 2.

6.      The Defendants reliance on contingent collateral and contingent change order and claims to show that Safeco will be adequately paid is contra to the plain language of the Trust Agreement and GIA.  The only present value collateral which Safeco has enforceable rights to is the real property located at 20 Fair Oaks Lane, Cohasset, Massachusetts.

As such, Safeco continues to request the attachment of the real estate and requests a hearing regarding said motions.

Respectfully Submitted,
By his attorneys,


*Paula-Lee Chambers / mk*
Bert J. Capone, BBO#072880
Paula-Lee Chambers, BBO#566888
CETRULO & CAPONE, LLP
Two Seaport Lane, 10th Floor
Boston, MA 02110
(617) 217-5500

Dated:  November 8, 2004

## CERTIFICATE OF SERVICE

I certify that on November 8, 2004, I served the following by first class mail on the following:

Francis C. Morrissey, Esquire
Nixon Peabody, LLP
100 Summer Street
Boston, MA  02110


*Paula-Lee Chambers/mk*
Paula-Lee Chambers, BBO# 566888

02630-0004
349651v1

# EXHIBIT A

## TRUST ACCOUNT AGREEMENT

This Agreement is made, in this ___ day of _____ , 2004, by and between Safeco Insurance Companies ("Surety"), New England Foundation Company, Inc. ("Principal" or "New England"), Beacon Consulting Group, Inc. ("Beacon") and Patrick A. O'Neill and Patricia E. O'Neill ("Indemnitors").

### I.  RECITALS

WHEREAS, on or about June 18, 1997, the Principal and the Indemnitors executed an Agreement of Indemnity with the Surety (the "Agreement of Indemnity"), a copy of which is attached hereto as Exhibit 1;

WHEREAS, the Principal entered into a construction contract (the "Contract") with Aetna Bridge Company (the "Obligee") for the project known as RI-DOT Contract No. 2002-CB-097 Drill Shafts of Washington Bridge (the "Project");

WHEREAS, as required by the Contract, and induced by and in reliance upon the execution of the Agreement of Indemnity by the Principal and the Indemnitors, the Surety executed a Subcontract Performance Bond and Subcontract Payment Bond under Bond No. 6192455 (the "Bonds") as more fully set forth in Exhibit 2;

WHEREAS, the Contract is in its final stage of completion, and the Principal and the Indemnitors hereby acknowledge and admit that: (a) the Principal is financially unable to perform or complete the performance of the Contract; (b) certain subcontractors and suppliers of labor and/or materials with respect to the Contract and Project have not been paid; (c) as a result of (a) and (b) above, the Principal has requested financing by the surety to complete the bonded contract;  and (d) but for the willingness of the Surety to enter into this Agreement, the Principal will be unable to complete the performance of the

Contract and pay its subcontractors and suppliers of labor and/or materials with respect to the Contract and Project.

WHEREAS, in order for the Surety to consider the Principal's request for financing of the bonded contract, the Surety must conduct an investigation prior to responding to the Principal's request; and

WHEREAS, during this Surety's investigation, the Surety agrees to provide funding through a joint control trust account as set forth below; and

WHEREAS, once the surety's investigation has revealed information sufficient to respond to the Principal's request for financing and a determination has been made and communicated to the Principal, the parties will enter into a separate long term financing agreement; and

NOW, THEREFORE, in consideration of these premises and other good and valuable consideration, the receipt and sufficiency which is hereby acknowledged, it is hereby mutually understood and agreed by and among the Principal, the Indemnitors, the Surety and Beacon as follows:

## II.  Indemnification.

1.    The Principal and the Indemnitors hereby acknowledge their execution of the Agreement of Indemnity and reaffirm their joint and several obligations and liabilities to the Surety.

2.    Nothing contained in this Agreement and done pursuant hereto shall in any way impair, alter or modify any and/or all of the rights and remedies of the Surety against the Principal and/or the Indemnitors under or in connection with the Agreement of

Indemnity, nor the rights and remedies of the Principal and/or Indemnitors against the
Surety.

3.      As initial collateral to secure the obligations of the Principal and the Indemnitors
to the Surety pursuant to the terms of the Agreement of Indemnity and this Agreement,
the Principal and the Indemnitors ,the Principal is the owner of a certain Life Insurance
policy number 00277934, with the Empire General Life Assurance Corporation, insuring
the life of Patrick A. O'Neill ("Policy"). As part of this Agreement, the Principal, on or
before the execution of this Agreement, shall:  a) Irrevocably designate "Safeco
Insurance Companies" as sole beneficiary and loss payee of the Policy; and b) Complete
an Assignment of Policy as collateral security to "Safeco Insurance Companies." The
Principal shall take all actions necessary and shall execute any and all documents and
forms as may be required to effectuate the designation and assignment as set forth in (a)
and (b) above. The Principal shall and is authorized by the Surety to apply any
accumulated value of the Policy to the payment of any premiums due. In the event that
for any reason the accumulated value is insufficient to pay all or any portion of any
premium payment(s), the Principal and/or Indemnitors shall pay any and all premiums
due and shall keep the Policy in full force and effect throughout the term of this
Agreement. The Principal shall provide the Surety with sufficient evidence of payment
of all premiums. The Principal and/or Indemnitors shall not authorize or allow the Policy
to be released, surrendered, cancelled, amended, modified, transferred or assigned and
will do nothing to impair the Surety's rights under the Policy without the prior written
consent of the Surety. In the event payment of a death benefit is made to the Surety
under the Policy, the Surety shall be entitled to apply all or a portion of the death benefit

3

proceeds to offset all or a portion of the Surety's loss. In the event of a default under this Agreement by the Principal and/or Indemnitors, the Surety may, at its sole option and discretion, liquidate and receive any portion or all of the accumulated and/or surrender value of the Policy in one or more payments. In the event the total obligation to the Surety is less than the total value of the Policy, partial assignment or remainder beneficial interest to remaining beneficiaries, the Surety shall be entitled to apply all or a portion of the death benefit proceeds to offset all or a portion of the Surety's loss.

4.     As part of this Agreement, and with the consent and approval of the Indemnitors, the Principal shall execute and deliver to the Surety voluntary letter of default and termination (the "Letter of Default") on the Principal's corporate letterhead addressed to the Obligee for the Contract and Project, copies of which are attached hereto as Exhibit 3, and are incorporated herein by reference. In accordance with the terms of the Agreement of Indemnity and this Agreement, the Surety shall hold and may use the Letter of Default on the Contract and Project, at the sole option and discretion of the Surety, whether or not there is a default under any of the Contract, the Agreement of Indemnity or this Agreement, and regardless as to whether this Agreement has been terminated by the Surety. The Surety, however, agrees to notify the Principal and Indemnitors before taking such action.

5.     As part of this Agreement, and with the consent and approval of the Indemnitors, the Principal shall execute and deliver to the Surety irrevocable voluntary letter of direction (the "Letter of Direction") copies of which are attached hereto as Exhibit 4, addressed to the Obligee directing that all Contract Funds (as defined in Section II.2 below) from the Contract directly payable to the Trust Account.

The Principal, Indemnitors and the Surety agree  that the Surety reserves its rights to demand additional collateral security as part of any continuing financing by the Surety.

### III.    Trust Account.

6.      The Principal and the Surety shall open a joint control trust checking account (the "Trust Account") at Citizen's Bank (the "Bank") designated in the name of New England Foundation Company," a copy of which is attached hereto as Exhibit 5. The Principal has authorized the Bank to establish the Trust Account.  The Principal shall not open any other account(s) at the Bank, or any other bank or financial institution of any kind, without the express written consent of the Surety for use in connection with bonded jobs.

7.      For the purposes of this Agreement, "Contract Funds" shall mean any and all monies payable to or received by the Principal under or in connection with the Contracts, including but not limited to monies earned and to be earned, payment of retained percentages and final payments due or to become due to the Principal of every kind or nature under the Contracts, including payments for all extras, claims, bonuses and/or of any other kind or nature which may be received by the Principal from the Contracts.

8.      The Principal, the Indemnitors, and the Surety agree that all Contract Funds from the Contract shall be deemed Trust funds and shall be deposited into Trust Account. The Principal agrees to direct the Obligees on the Contract to make all Contract Funds from the Contract directly payable to the Trust Account.

9.      In addition, the Surety agrees that all monies which the Surety may, in its sole discretion and/or in accordance with the terms and conditions of this Agreement or the Agreement of Indemnity, advance or loan to the Principal shall be deposited in the Trust

Account unless otherwise agreed between the Principal and either Beacon or the Surety. The Principal and Indemnitors acknowledge and agree that all funds deposited in the Trust Account are the sole property of the Surety.

10.     The Contract Funds are hereby irrevocably segregated, earmarked and set aside solely and only for the purposes set forth in this Agreement. The Contract Funds and all other monies deposited in the Trust Account shall be considered trust funds. The Principal and Beacon shall hold all Contract Funds in the Trust Account, in trust, for the Surety separate and apart from all other funds and property of the Principal. The Principal and Beacon hereby covenant and agree that they will not knowingly permit any funds in the Trust Account, whether represented by checks, vouchers, orders or otherwise, to be used for any purpose other than as more particularly set forth in this Agreement unless otherwise agreed between the Principal and either Beacon or the Surety.

11.     All checks and charges against the Trust Account shall be required to have one signature, the authorized signatures being that of an authorized representative of the Surety – Ann T. Hester or Kirk Austin. The Principal and the Surety mutually agree that they will work in conjunction with the Bank to establish such other means and methods of transferring funds to and from the Trust Account so long as such means or methods require the consent of both the Principal and the Surety or Beacon for any withdrawal or transfer of funds from the Trust Account.

12.     The persons designated to countersign checks or approve transfers on the Trust Account on behalf of the Surety are Ann T. Hester and Kirk Austin. It is understood and agreed that the Surety may, in its sole discretion, substitute or add another

6

representative or representatives for the persons originally named, without the prior consent of, but upon notice to the Principal and the Bank.

13.     The Principal hereby agrees that any Contract Funds it may receive contrary to the letters of direction sent to the Obligee pursuant to Paragraph 3 herein, or because of the Principal's failure to promptly issue such letter of direction or for any other reason shall be held as trust funds by the Principal and shall be immediately deposited with the Trust Account or presented to a representative of the Surety or Beacon for deposit in the Trust Account.

14.     The Surety shall maintain possession of the checkbook for the Trust Account. Ann T. Hester and/or Kirk Austin shall receive directly from the Bank all bank statements and the originals of all deposit slips, canceled checks, debit memos, service charges, etc. from the Trust Account. The Principal hereby authorizes the Bank to furnish to the Surety and Ann T. Hester such information as the Surety may desire concerning deposits to and withdrawals from the Trust Account. The Principal also authorizes the Obligee to furnish to the Surety complete information concerning payments made to the Principal of Contract Funds from the Contracts and to furnish any other information concerning the Contracts which the Surety may require. Upon request from the Principal, the Surety shall furnish to the Principal copies of all bank statements and checks which have been returned and copies of any other documents or instruments relating to the Trust Account.

15.     None of the Contract Funds deposited in the Trust Account shall be subject to any right of set-off by the Bank as a result of any transactions involving the Bank, the Principal and/or the Indemnitors, nor be assigned or diverted from the uses or purposes

set forth in this Agreement. The Principal makes no representations concerning the position of the Bank concerning any right of set-off by the Bank or the Bank's willingness to issue a written acknowledgment as set forth herein. The Surety may require of the Bank a written acknowledgment of this paragraph as a condition to the establishment or continuance of the Trust Account at the Bank.

16.    Except as provided in Paragraph 18 or as the Principal and the Surety may otherwise agree, the Contract Funds shall be used solely for the payment of labor, material, equipment and subcontractor costs actually used in the prosecution of the work under the Contracts and for which the Surety may become liable under its Bonds. It is specifically understood and agreed by the Principal and Indemnitors, and except as set forth herein, that the Contract Funds shall not be used to pay obligations of the Principal on contracts not bonded by the Surety.

17.    The Principal and Indemnitors acknowledge that the Surety is not obligated to pay, or cause to be paid, any of the overhead and general and administrative expenses of the Principal. The Surety, however, at its option and sole discretion, may consent to the use of some of the Contract Funds and other funds in the Trust Account, for payment of the Principal's overhead and general administrative expenses.

18.    On a weekly basis, no later than 5 p.m. on Monday of each week due to the payroll cycle, or as otherwise requested by the Surety or Beacon, the Principal will provide to the Surety and Beacon a document entitled "Payment Requisition", a form of which is attached hereto as Exhibit 6. The Payment Requisition will contain a list of those payments the Principal wishes to issue from the Trust Account, broken down by name of payee, check number and check amount, and listing the total payment to all

8

payees. Backup documentation supporting the requested payments shall be attached to the Payment Requisition. The Payment Requisition shall be executed by the Principal establishing its request to the Surety and Beacon for payment of the checks from the Trust Account. In addition, and as a condition to the issuance of any check from the Trust Account, a partial waiver and release in a form acceptable to the Surety in the amount of the check shall be obtained by the Principal and delivered to Beacon or the Surety. The Payment Requisition shall be accompanied by checks to the payees listed on the Payment Requisition and executed by the Principal.    The Payment Requisition, executed checks and back-up materials as set forth herein will be immediately delivered to Ann T. Hester. Ann T. Hester will promptly review the Payment Requisition and those checks that are approved for payment will be signed as authorized and set forth in paragraph 6.

19.     Ann T. Hester agrees to immediately mail the approved checks, and any partial waiver and release forms if required, to the named payees in stamped addressed envelopes, except that New England still send checks to employees of the Principal by overnight delivery to the Principal so as to be received by the Principal no later than 10 a.m. on Wednesday of the week in question.    The Principal shall deliver employee paychecks by had in accordance with applicable collective bargaining agreements.

20.     It is expressly understood by the Principal and Indemnitors that should the Surety or Beacon disapprove of any payments requested by the Principal, such decision is final as to the Principal and Indemnitors, and the Principal and Indemnitors shall have no right or cause of action of any kind or nature against the Surety or Beacon or their agents, employees, attorneys or representative as a result of such disapproval.

21.    Any amounts transferred by the Surety to the Trust Account shall be

conclusively presumed to be a loss to the Surety and for which the Surety shall have

equitable rights of subrogation, notwithstanding the use or misuse of such funds by the

Principal, for which the Principal and Indemnitors shall be obligated to indemnify the

Surety in accordance with the terms of this Agreement and the Agreement of Indemnity.

22.    Payment of all withholding and payroll taxes and other amounts deducted

from employee wages from the contracts shall be paid in accordance with this

Agreement.  It shall be the responsibility of the Principal, within the time limits of all

appropriate statutes and regulations, to prepare and present to the Surety and Beacon

necessary information confirming payments of such taxes and other deductions from the

payroll.

23.    Pursuant to the Assignment and the Power of Attorney which is attached hereby

as Exhibits 7 and 8 and incorporated by reference, the Surety, through its authorized

signatories in Paragraph below, is authorized and empowered to endorse in the name of

the Principal any and all checks received by the Surety or its representatives constituting

Contract Funds from the Contracts and/or All Net Proceeds from the Collateral Account,

and to deposit said checks solely and only into the Trust Account.  The Principal hereby

agrees that the Surety may name one or more substitutes for the attorneys named in the

Power of Attorney, with notice to the Principal.  Furthermore, the Principal hereby

ratifies and confirms all acts that any attorney or his substitute or substitutes may lawfully

do or cause to be done by virtue of the Power of Attorney contained in Exhibit 8.

**IV.    Miscellaneous Provisions.**

24.    This Agreement shall be construed and governed by the laws of the

10

Commonwealth of Massachusetts, and shall bind the heirs, personal representatives, assignees and successors in interests of the parties hereto.

25.     The Principal, Indemnitors, Surety and Beacon hereby represent, covenant and warrant that they have full right, power and authority, to execute and perform this Agreement.

26.     THE PRINCIPAL AND THE INDEMNITORS HEREBY ACKNOWLEDGE AND AGREE THAT THE SURETY HAS NO OBLIGATION TO FUND THE TRUST ACCOUNT, PROVIDE FINANCIAL ASSISTANCE TO THE PRINCIPAL IN ANY MANNER OR METHOD, OR MAKE ANY PAYMENTS OTHER THAN THOSE PAYMENTS WHICH THE SURETY HAS MADE PURSUANT TO THE TERMS OF THIS AGREEMENT. THE PRINCIPAL AND THE INDEMNITORS SPECIFICALLY ACKNOWLEDGE AND AGREE THAT THEIR EXECUTION OF THIS AGREEMENT HAS NOT BEEN INDUCED BY OR MADE IN RELIANCE UPON ANY ORAL OR WRITTEN REPRESENTATIONS BY THE SURETY, BEACON OR THEIR AGENTS. IN THE EVENT THAT THE SURETY AGREES TO FUND THE TRUST ACCOUNT, PROVIDE FINANCIAL ASSISTANCE TO THE PRINCIPAL IN ANY MANNER OR METHOD, OR MAKE ANY PAYMENTS OTHER THAN THOSE PAYMENTS FOR WHICH THE SURETY HAS MADE PURSUANT TO THE TERMS OF THIS AGREEMENT, SAID ACTION SHALL BE IN THE SOLE JUDGMENT, OPTION AND DISCRETION OF THE SURETY AND IN THE BEST INTERESTS OF THE SURETY AND NOT THE PRINCIPAL OR THE INDEMNITORS. FURTHERMORE, THE SURETY'S AGREEMENT TO TAKE ANY SUCH ACTION DOES NOT BIND AND COMMIT THE SURETY TO ANY OTHER

11

FUNDING OF THE TRUST ACCOUNT, PROVIDING OF FINANCIAL ASSISTANCE, OR MAKING OF ANY PAYMENTS OTHER THAN THOSE PAYMENTS WHICH THE SURETY HAS MADE PURSUANT TO THE TERMS OF THIS AGREEMENT.

27.     THE EXECUTION OF THIS AGREEMENT BY THE SURETY IN NO MANNER BINDS THE SURETY TO EXECUTE ANY FUTURE BOND OR BONDS ON BEHALF OF THE PRINCIPAL. THE PRINCIPAL AND THE INDEMNITORS SPECIFICALLY ACKNOWLEDGE AND AGREE THAT THEIR EXECUTION OF THIS AGREEMENT HAS NOT BEEN INDUCED BY OR MADE IN RELIANCE UPON ANY ORAL OR WRITTEN REPRESENTATIONS BY THE SURETY OR ITS AGENTS, EMPLOYEES, ATTORNEYS OR CONSULTANTS THAT THE SURETY WILL EXECUTE ANY FUTURE BOND OR BONDS ON BEHALF OF THE PRINCIPAL.

28.     The Principal shall maintain accurate books, records and accounts showing clearly, among other things, the itemized receipts and disbursements allocable to the Contracts. The books, records and accounts shall be available for examination by the Surety, Beacon and their representatives at the Principal's principal office upon reasonable notice at all times during regular business hours. The Surety is entitled to receive copies of all bank account records of any and all accounts of the Principal, including but not limited to the Trust Account, including canceled checks, bank statements, deposit slips, debit memos, etc.

29.     The Principal hereby authorizes the Surety, Beacon and their

12

representative(s), including attorneys, accountants, consultants or employees, to visit at any time the job site of the Contracts, to obtain at any time access to all job records and personnel of the Principal to determine the status of the progress on the Contracts and to obtain at any time any and all other information and documentation with respect to the Contracts deemed necessary in the sole discretion of the Surety and/or its representative(s).

30.    This Agreement is solely for the benefit of the parties hereto and shall not create any rights in any person not a party hereto, or in any way increase the rights of third persons, or increase the obligations of any party hereto to any third person, or increase the liability or obligations of the Surety under its Bonds.

31.    The terms and provisions of the Agreement of Indemnity shall remain in full force and effect. Nothing contained in this Agreement shall in any way prejudice or waive the Surety's legal and equitable rights of subrogation of the Surety. The rights of the Surety under this Agreement are in addition to, and not in lieu of, any of the rights which the Surety may have against the Principal or any other parties, including the Indemnitors, at law, in equity or by the terms of any other agreement, including the Agreement of Indemnity. All rights of the Surety pursuant to the Agreement of Indemnity and this Agreement shall inure to the benefit of the Surety, its co-sureties, if any, and its and their reinsurers.

32.    No change, addition or amendment shall be made to this Agreement or to any of the terms, covenants or conditions hereto except by writing, signed by the parties to this Agreement.

33.    In the event that one or more provisions of this Agreement shall be declared to be invalid, illegal or unenforceable in any respect, unless such invalidity, illegality or unenforceability shall be tantamount to a failure of consideration, the validity, legality and enforceability of the remaining provisions contained in this Agreement shall not in any way be affected or impaired thereby.

34.    Except as otherwise specifically provided herein, or as specifically and subsequently agreed to by the parties in writing, all notices, requests or other communications required or permitted to be given hereunder shall be deemed duly given if mailed by the United States mail, postage prepaid and addressed as follows:

To the Principal and the Indemnitors:

Patrick O'Neill
President & Treasurer
New England Foundation Co. Inc.
77 Federal Aveue
Quincy, MA 02169

E-Mail: paoneill@nefco.com

With a copy to:

Bill Lance, Esquire
Nixon, Peabody, LLP
101 Federal Street
Boston, MA 02110


Patricia F. O'Neill
New England Foundation Co. Inc.
77 Federal Aveue
Quincy, MA 02169

E-Mail:

14

With a copy to:

> Bill Lance, Esquire
> Nixon, Peabody, LLP
> 101 Federal Street
> Boston, MA  02110

To the Surety:

> Ann T. Hester
> Safeco Insurance Company
> 2800 N. Higgins Road
> Suite 1100
> Hoffman Estates, IL  60195
> annhes@safeco.com

With a copy to:

> Bert J. Capone, Esq.
> Paula-Lee Chambers, Esq.
> Cetrulo & Capone LLP
> Two Seaport Lane, 10th Floor
> Boston, MA 02210
>
> E-Mail:  bcapone@cetcap.com
>             pchambers@cetcap.com

It is agreed by the Principal and the Indemnitors that this Agreement shall be construed without any regard to any presumption or other rule requiring construction against the party causing this Agreement, or any Exhibits attached to this Agreement, to be drafted.

35.    This Agreement may be executed in one or more counterparts, each of which shall be deemed to be an original.

IN WITNESS WHEREOF, the parties have executed this Agreement on the date indicated above, and each of the undersigned personally represent and warrant that they have the full right, power and authority to execute this Agreement on behalf of the respective parties.

ATTEST:

PRINCIPAL

By:  New England Foundation Co.

ATTEST:

SURETY

By:  Safeco Insurance  Companies

ATTEST:

INDEMNITOR

By:  Patrick A. O'Neill

ATTEST:

INDEMNITOR

By:  Patricia F. O'Neill

16

ATTEST:

_____          _____
                                         By:  Beacon Consulting Group, Inc.

320385

# EXHIBIT B



**GENERAL AGREEMENT OF INDEMNITY FOR CONTRACTORS**

SAFECO INSURANCE COMPANY OF AMERICA
GENERAL INSURANCE COMPANY OF AMERICA
FIRST NATIONAL INSURANCE COMPANY OF AMERICA
SAFECO NATIONAL INSURANCE COMPANY
HOME OFFICE: SAFECO PLAZA
SEATTLE, WASHINGTON 98185

THIS AGREEMENT is made by the Undersigned in favor of the SAFECO Insurance Companies for the purpose of indemnifying them from all loss and expense in connection with any Bonds for which any SAFECO Insurance Company now is or hereafter becomes Surety for any of the following as Principal: __New England Foundation Co., Inc.__

In consideration of the execution of any such Bonds for Contractor and as an inducement to such execution by Surety, the Undersigned, jointly and severally, agree as follows:

**DEFINITIONS:** Where they appear in this agreement, the following terms shall be considered as defined in this paragraph:

**Contractor:** Any one, combination of, or all of the persons, firms or corporations set forth above or their successors in interests, whether alone or in joint venture with others not named herein.

**Bond:** Any and all bonds, undertakings or instruments of guarantee and any continuation, extension, alteration, renewal or substitution thereof, whether with the same or different penalties, executed by Surety.

**Surety:** Any one or combination of the following: SAFECO Insurance Company of America; General Insurance Company of America; First National Insurance Company of America; SAFECO National Insurance Company; any person or company joining with any of the aforesaid companies in executing any Bond, executing any Bond at their request or providing reinsurance to them with respect to any Bond.

**Contract:** Any contract between Contractor and a third party, the performance of which is guaranteed by any Bond for which Surety is surety.

**Default:** Contractor shall be deemed to be in default under this agreement in the event it:

(1) Is declared to be in default by the Obligee of any Bond;
(2) Actually breaches or abandons any Contract;
(3) Fails to pay, to the extent due in whole or in part, claims, bills or other indebtedness incurred in connection with the performance of any Contract;
(4) Becomes the subject of any agreement or proceeding of liquidation or receivership, or actually becomes insolvent;
(5) If an individual, dies, is adjudged mentally incompetent, is convicted of a felony or disappears and cannot be immediately found by Surety by use of usual methods;
(6) Breaches, fails to perform, or comply with, any provision of this agreement.

**INDEMNITY TO SURETY:** Undersigned agree to pay to Surety upon demand:

1. All loss, costs and expenses of whatsoever kind and nature, including court costs, reasonable attorney fees (whether Surety at its sole option elects to employ its own attorney, or permits or requires Undersigned to make arrangements for Surety's legal representation), consultant fees, investigative costs and any other losses, costs or expenses incurred by Surety by reason of having executed any Bond, or incurred by it on account of any Default under this agreement by any of the Undersigned.

   In addition the Undersigned agree to pay to Surety interest on all disbursements made by Surety in connection with such loss, costs and expenses incurred by Surety at the maximum rate permitted by law calculated from the date of each disbursement.
2. An amount sufficient to discharge any claim made against Surety on any Bond. This sum may be used by Surety to pay such claim or be held by Surety as collateral security against loss on any Bond;
3. Any original, additional or renewal premium due for any Bond.

With respect to claims against Surety:

1. Surety shall have the exclusive right for itself and the Undersigned to determine in good faith whether any claim or suit upon any Bond shall, on the basis of liability, expediency or otherwise, be paid, compromised, defended or appealed.
2. Surety may incur such expenses, including reasonable attorneys' fees, as deemed necessary or advisable in the investigation, defense and payment of such claims.
3. Surety's determination in good faith of the foregoing shall be final and conclusive upon the Undersigned.
4. An itemized statement of loss and expense incurred by Surety, sworn to by an officer of Surety, shall be prima facie evidence of the fact and extent of the liability of Undersigned to Surety in any claim or suit by Surety against Undersigned.

**SURETY'S REMEDIES IN EVENT OF DEFAULT:** In event of default by Contractor, Surety shall have the right, at its sole discretion, to:

1. Take possession of the work under any and all Contracts and to arrange for its completion by others or by the Obligee of any Bond;
2. Take possession of Contractor's or any of Undersigned's equipment, materials and supplies at the site of the work, or elsewhere, if needed for prosecution of the work, as well as Contractor's office equipment, books and records, and utilize the same in completion of the work under the Contract without payment of any rental for such use;
3. Loan or guarantee a loan to Contractor of such money as Surety shall see fit, for the purpose of completing any Contract, or for discharging Contractor's obligations for labor, material, equipment, supplies and other charges, incurred in connection with any Contract;
4. Take such other action as Surety shall deem necessary to fulfill its obligations under any Bond.

S-2 R16 3/82

®Registered trademark of SAFECO Corporation.
PRINTED IN U.S.A.

Undersigned waive all notice of such default, of the payment of any claim or of the making of any loan to Contractor by Surety. Should Undersigned learn of any claim or suit against Contractor, for which Surety may be held liable, Undersigned shall give prompt notice to Surety of such claim or suit.

Separate suits may be brought under this agreement as causes of action accrue, and the pendency or termination of any such suit shall not bar any subsequent action by Surety.

**SECURITY TO SURETY:** As collateral security to Surety for the agreement of the Undersigned to repay all loss and expense to Surety, the Undersigned:

1. Assigns to Surety, as of the date of execution of any Bond, all rights of the Contractor in, or in any manner growing out of:
   a. Any Contract or modification thereof;
   b. Any subcontract or purchase order and against any legal entity and its surety who has contracted with Contractor to furnish labor, materials, equipment and supplies in connection with any Contract;
   c. Monies due or to become due Contractor on any Contract, including all monies earned or unearned which are unpaid at the time of notification by Surety to the Obligee of Surety's rights hereunder;
   d. Any actions, causes of action, claims or demands whatsoever which Contractor may have or acquire against any party to the Contract, or arising out of or in connection with any Contract including but not limited to those against obligees and design professionals and any surety or sureties of any obligee, and Surety shall have the full and exclusive right, in its name or in the name of the Contractor, but not the obligation, to prosecute, compromise, release or otherwise resolve such actions, causes of action, claims or demands;
   e. Any and all rights, title, interest in, or use of any patent, copyright or trade secret which is or may be necessary for the completion of any bonded work;
   f. All monies due or to become due to Contractor on any policy of insurance relating to any claims arising out of the performance of any Contract or to premium refunds, including, but not limited to, builders risk, fire, employee dishonesty or workers' compensation policies.

The Surety agrees to forbear exercising the rights granted to it in (a) through (f) until there is a Default under this agreement;

2. Irrevocably nominate and appoint any officer of Surety as the true and lawful attorney-in-fact of the Undersigned, with full right and authority in event of Contractor's default to:
   a. Sign the name of the Undersigned to any voucher, release, satisfaction, check, bill of sale of property referred to herein, or any other paper or contract necessary or desired to carry into effect the purposes of this agreement;
   b. Dispose of performance of any Contract by subletting it in Contractor's name or otherwise;
3. Authorize Surety to join any and all of the Undersigned as parties defendant in any action, regardless of venue, against Surety on account of any Bond, and to enforce the obligations hereunder directly against any of the Undersigned without the necessity of first proceeding against the Contractor;
4. Agree that all monies earned by Contractor under any Contract are trust funds, whether in the possession of Contractor or otherwise, for the benefit of, and for payment of Contractor's obligations for, labor, material, and supplies furnished to Contractor in performance of such Contract for which Surety would be liable under any Bond on such Contract;
5. Agree that this agreement may at any time be completed and filed by Surety in such a manner that it will qualify as a financing statement under the applicable provisions of any statute of any state which has adopted The Uniform Commercial Code, and that Surety may add such schedules to this agreement, describing specific items of security covered hereunder as shall be necessary under such statutes.

**GENERAL PROVISIONS:**

1. Assent by Surety to changes in any Contract or Bond or refusal to assent shall not release or affect the obligations of Undersigned to Surety even though any such assent by the Surety does or might increase the liability of the Undersigned.
2. Surety has the right to decline to execute, provide or procure any bond requested by Contractor. If Surety does execute, provide or procure the execution of a bid bond or proposal bond, or agrees or consents to provide such contract of suretyship, Surety retains the right to decline to execute the final bond (including, but not limited to, performance, payment or maintenance bonds) that may be required in connection with any award that may be made under the bid proposal or tender to which the bid proposal bond or agreement or consent to provide such contract of suretyship is given.
3. Surety shall have every right, defense or remedy which a personal surety without compensation would have, including the right of exoneration and the right of subrogation.
4. Until Surety shall have been furnished with competent evidence of its discharge, without loss from any Bonds, Surety shall have the right to free access at reasonable times to the books, records and accounts of each of the Undersigned for the purpose of examining, copying or reproducing them. Each one of the Undersigned hereby authorizes any depositories in which funds of any of the Undersigned may be deposited to furnish to Surety the amount of such deposits as of any date requested, and any legal entity doing business with the undersigned is authorized to furnish any information requested by Surety concerning any transaction. Surety may furnish in confidence copies of any information, which it now has or may hereafter obtain concerning each of the Undersigned, to other persons or companies for the purpose of procuring co-suretyship or reinsurance or of advising interested persons or companies.
5. The undersigned will, on request of Surety, procure the discharge of Surety from any Bond and all liability by reason thereof. If such discharge is unattainable, the Undersigned will, if requested by Surety, either deposit collateral with Surety, acceptable to Surety, sufficient to cover all exposure under such bond or bonds, or make provisions acceptable to Surety for the funding of the bonded obligation(s).
6. Undersigned warrant that each of them is specifically and beneficially interested in the obtaining of each Bond.
7. In case the execution hereof by any of the Undersigned may be defective or invalid for any reason, such defect or invalidity shall not in any manner affect the validity of this obligation or the liability hereunder of any other of the Undersigned. Invalidity of any provision of this agreement by reason of the laws of any state or for any other reason shall not render the other provisions hereof invalid.
8. Execution by Contractor or any of the Undersigned of any application for any Bond or of any other agreement of indemnity in behalf of Contractor, or the taking of indemnity of any other person by Surety with respect to any Bond of Contractor, shall in no way be deemed to waive, diminish or abrogate any rights of Surety under this agreement.
9. The Undersigned waive and subordinate all rights of indemnity, subrogation and contribution each against the other until all obligations to the Surety under this agreement, at law or in equity, have been satisfied in full.
10. The rights and remedies afforded to the Surety by the terms of this agreement and the terms themselves may not be waived or modified orally and no written change or modification shall be effective until signed by an employee of the Surety.
11. This agreement is to be liberally construed so as to protect, exonerate and indemnify the Surety.

**TERMINATION:** This agreement is a continuing obligation of the Undersigned unless terminated as provided in this paragraph. An Undersigned desiring to terminate liability as to future Bonds of Contractor must:

1. Give written notice to Surety at its home office, Seattle, Washington 98185, by certified or registered mail, of such termination;
2. State in such notice the effective date (not less than thirty days after the receipt of notice by Surety) of termination of such Undersigned's liability for future Bonds.
3. It is understood and agreed that oral notice to or constructive notice to any agent or employee of Surety shall not constitute effective notice of termination under this agreement.

After the effective date of termination, the Undersigned giving notice shall be liable hereunder for:

1. Bonds executed or authorized prior to such date, and renewals and extensions thereof;
2. Bonds executed pursuant to a bid or proposal bond executed or authorized prior to such date, and renewals and extensions thereof.

Such termination of liability as to an Undersigned shall in no way affect the obligation of any other Undersigned who has not given notice as herein provided.

EXECUTED this 18th day of June 19 97

Attest: *Patricia C. O'Neill*
Patricia E. O'Neill, Clerk

New England Foundation Co., Inc.

By: *[signature]*
Patrick A. O'Neill, President

X *[signature]*
Patrick A. O'Neill, Individually

X *Patricia C. O'Neill*
Patricia E. O'Neill, Individually

## INDIVIDUAL ACKNOWLEDGMENT

STATE OF _Massachusetts_
COUNTY OF _Norfolk_        } ss.
On this _18th_ day of _June_ , 19 _97_ , before me personally appeared
_Patrick A. O'Neill and Patricia E. O'Neill_
known and known to me to be the individual(s) described in and who executed the foregoing agreement and acknowledged that _they_ , to me
executed the same for the purposes, considerations and uses therein set forth as _their_ free and voluntary act and deed.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my OFFICIAL SEAL, the day and year first above written.

(SEAL)

Notary Public, residing at _ARLINGTON, MA_
(Commission expires _____ )

John R. Roma
Notary Public
Commonwealth of Massachusetts
My Commission Expires
January 22, 2004

## INDIVIDUAL ACKNOWLEDGMENT

STATE OF _____
COUNTY OF _____        } ss.
On this _____ day of _____ , 19 ___ , before me personally appeared
_____ , to me
known and known to me to be the individual(s) described in and who executed the foregoing agreement and acknowledged that ___he___
executed the same for the purposes, considerations and uses therein set forth as ___h___ free and voluntary act and deed.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my OFFICIAL SEAL, the day and year first above written.

(SEAL)

Notary Public, residing at _____
(Commission expires _____ )

## CORPORATE ACKNOWLEDGMENT

STATE OF _Massachusetts_
COUNTY OF _Norfolk_        } ss.
On this _18th_ day of _June_ , 19 _97_ , before me personally appeared
_Patrick A. O'Neill and Patricia E. O'Neill_
_President_ and _Clerk_ , to me known to be the
of _New England Foundation Co., Inc._
the corporation executing the above instrument, and acknowledged said instrument to be the free and voluntary act and deed of said
corporation, for the uses and purposes therein mentioned and on oath stated that the seal affixed is the seal of said corporation and that it was
affixed and that _they_ executed said instrument by order of the Board of Directors of said corporation.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my OFFICIAL SEAL, the day and year first above written.

(SEAL)

Notary Public, residing at _ARLINGTON, MA._
(Commission expires _____ )

John R. Roma
Notary Public
Commonwealth of Massachusetts
My Commission Expires
January 22, 2004

## CORPORATE ACKNOWLEDGMENT

STATE OF _____
COUNTY OF _____        } ss.
On this _____ day of _____ , 19 ___ , before me personally appeared
_____ , to me known to be the
_____ and _____ of _____
the corporation executing the above instrument, and acknowledged said instrument to be the free and voluntary act and deed of said
corporation, for the uses and purposes therein mentioned and on oath stated that the seal affixed is the seal of said corporation and that it was
affixed and that ___he___ executed said instrument by order of the Board of Directors of said corporation.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my OFFICIAL SEAL, the day and year first above written.

(SEAL)

Notary Public, residing at _____
(Commission expires _____ )

**Bond 6192455**

## SUBCONTRACT PAYMENT BOND

KNOW ALL BY THESE PRESENTS, That we, New England Foundation Company, Inc.

77 Federal Ave. Quincy, MA 02169
(Here insert the name and address, or legal title, of the Subcontractor)

as Principal, herein called Principal, and SAFECO INSURANCE COMPANY OF AMERICA

corporation of the State of _____ Washington _____ , as Surety, herein called Surety, are held and firmly bound unto

Aetna Bridge Company, 30 Lockbridge Street, Pawtucket, Rhode Island, 02860
(Here insert the name and address, or legal title, of the General Contractor)

as Obligee, herein called Obligee, for the use and benefit of claimants as herein defined, in the amount of Two Million Ninety Two Thousand Three Hundred Seventy and 00/100 - - - - - - - - - - - - - - - - - Dollars ($ 2,092,370.00 ),

for the payment whereof Principal and Surety bind themselves, their heirs, executors, administrators, successors and assigns, jointly and severally, firmly by these presents.

WHEREAS, Principal has by written agreement dated February 3 2003 _____ entered into a

subcontract with Obligee for RI DOT Contract No. 2002-CB-097 Drill Shafts of Washington Bridge

which subcontract is by reference made a part hereof, and is referred to as subcontract.

NOW, THEREFORE, THE CONDITION OF THIS OBLIGATION IS SUCH, That, if the Principal shall promptly make payment to all Claimants as herein defined, for all labor and material used or reasonably required for use in the performance of the Subcontract, then this obligation shall be void; otherwise it shall remain in full force and effect, subject, however, to the following conditions:

1. A Claimant is defined as one having a direct contract with the Principal for labor, material, or both, used or reasonably required for use in the performance of the contract.
2. The above-named Principal and Surety hereby jointly and severally agree with the Obligee that every claimant as herein defined, who has not been paid in full before the expiration of a period of ninety (90) days after the date on which the last of such Claimant's work or labor was done or performed, or materials were furnished by such Claimant, may sue on this bond in the Claimant's own name for such sums as may be justly due Claimant.
3. No suit or action shall be commenced hereunder by any Claimant:
   (a) Unless Claimant shall have given written notice to any two of the following: The Principal, the Obligee, or the Surety above named, within ninety (90) days after such Claimant did or performed the last of the work or labor, or furnished the last of the materials for which said claim is made.
   (b) After the expiration of one (1) year following the date on which Principal ceased work on said Subcontract.
   (c) Other than in a state court of competent jurisdiction in and for the county or other political subdivision of the state in which the project, or any part thereof, is situated, or in the United States District Court for the district in which the project, or any part thereof, is situated, and not elsewhere.
4. The amount of this bond shall be reduced by and to the extent of any payment or payments made in good faith hereunder.

Signed and sealed this _____ 11th _____ day of _____ March _____ , 2003

In the presence of:

John R Roma

New England Foundation Company, Inc. (Seal)

By _____ Principal

SAFECO INSURANCE COMPANY OF AMERICA

By _____ Surety
Timothy P. Lyons                    Attorney-in-Fact

S-1842/GEEF 12/00

图013